We will hear argument next in No. 24-1571, Akamai Technologies v. MediaPointe. Mr. Liu. Good morning, Your Honors. May it please the Court, Larry Liu, on behalf of MediaPointe, Inc. and AMHC, Inc., I'd like to reserve three minutes for rebuttal. The District Court erred in three ways, first, at claim construction, by issuing a case-dispositive discovery sanction, and by granting summary judgment by construing factual inferences against MediaPointe, a non-movement. This Court should reverse three minutes. Let me start with claim construction. The patents I've issued, the 426 and 195 patents, concern the delivery of content across the Internet using the best and optimal routes. The District Court erroneously held the best and optimal terms indefinite. That was erred because the claims expressly describe how to determine the best and optimal routes, that is, by mapping and comparing trace routes. Claim one of the 426 patent. So would the following be a fair description, that the claims certainly say you do something with the routes, but they don't say exactly what you do with them, that there can be a used in the decision-making process, but the claims don't specify the determinative factors for making the decision itself, whether it's number of hops or latency or reliability or possibly other considerations as well. And it's that problem that undergirds the District Court's indefiniteness determination. Yes, Your Honor, but the prioritization problem is not a problem at all for indefiniteness. That's really a problem of implementation. Indefiniteness is about the reasonable certainty of the claim scope. Isn't it really about whether somebody could look at the claim and understand what falls within it so they can know whether they're going to infringe the claim or not infringe the claim? And when something says best or optimal and the specification discloses lots of different possibilities for determining that, it makes it hard to understand what falls within the claim and what does not. You're right, Judge Sullivan, that's the purpose of indefiniteness, but there's no issue here because the claim language makes clear that the best and optimal routes are determined by mapping and comparing trace routes. Here whether one prioritizes hops or latency, either one would infringe so long as the purported infringer determined the best or optimal routes by mapping and comparing the outputs of trace routes. To your question, Judge Ferranto, as to whether there are other factors like reliability or potentially other factors, those are not an issue because the District Court expressly construed trace routes to output only number of hops and latency, and that claim construction is not challenged on appeal by either party. Off-mic. It might be instructive for us to actually look at some of the claim language because you're contending that it is clarifying in this claim language and you would know what falls within the scope of the claim or what falls outside of it. Can you walk us through some of the pertinent claim language that you think gives that level of certainty? Yes, Judge Cunningham. So Claim 1 of the 426 patent discloses a, quote, mapping engine that is configured to map trace routes so as to determine one or more optimal routes. So Claim 1 is expressly drawing a causal connection between the mapping of the trace routes and the optimal routes. Claim 17, which Occamite admits is a, quote, narrower claim, likewise says determining a best route, quote, based on a comparison between the trace routes. It says nothing else about any other factor, and Occamite tries to muddy the water by citing parts of the specification that are not tethered to the best or optimal terms, either as to best or optimal routes or best and optimal network link. Can I just, you'll correct me, so my recollection is as following, is as follows, that in your trade brief you make a point like this, but maybe not so much in your blue brief, that in your blue brief you make the argument that it's clear from the patent that there's, everybody would kind of know hops and latency are the main thing or something and they pretty much go together, though not always, and that's good enough. Not that, as I don't remember from your blue brief, an argument that as long as trace routes are used, you know if you're a potential infringer that you are infringing regardless of what you then do with them except use them. You're right, Judge Ferranto, that argument is not crystal clear in our blue brief. It's raised expressly in our great brief at five in responding to Occamite's arguments about prioritization. We argue in the blue brief that there's no record evidence that the two factors, that latency, would ever diverge, and that is Occamite's burden to prove by clear and convincing evidence under this court's precedent in Gwendolyn Allison to show that if there are multiple methods for determining what is optimal or best, here Occamite's contention is that's a prioritization between hops and latency. That's their burden to show that those factors would ever diverge. There is no record evidence. But by raising it in your gray brief, are you raising it too late, that specific argument? No, Your Honor, because it's a continuation, it's another argument in support of the same issue as to whether this claim term is indefinite or indefinite. Occamite has an opportunity to respond here before this court as well here at argument, so there's no prejudice to it as to our contention that there's no waiver. So whether or not one prioritizes hops or latency, the claim term is infringed. Can you remind me, since this came up under claim construction, did you, I think I remember you did, but what was your proposed claim construction for this language? Our construction? And where would I find it? In the, it's in the appendix at, I'm not sure, it's in the court's claim construction order itself. Okay, okay. I can look there. Appendix page 10. Yes, Your Honor. So as to the best and optimal routes, our construction there was to distinguish those two terms from each other, and simply make clear that one allows for the potential of one or more most efficient or optimal routes, and best refers to the singular best route. And what occurred in the briefing below was that MediaPoint responded to Ocma's indefiniteness arguments and explained, as it does on appeal, that the mapping and comparison of trace routes resolves the supposed subjectivity problem. Your interpretation here at page 810 seems quite a bit different than what you're arguing now. No, Your Honor, because the issue when we were construing those claims was simply to distinguish best and optimal. In the briefing, as we argued, we argued that those terms are not indefinite and are subject to the mapping of trace routes. That's precisely... Now you seem to be focusing on the interpretation here is path determined to be among the most favorable based on one or more characteristics, and now you're identifying what those characteristics are. Yes, Your Honor. So how is that not different? Those characteristics are determined by the mapping of trace routes, one or more characteristics, and then the relevant claim language that follows optimal in the claims, Claim 1, the 426 patent is, or sorry, in the Claim 1, it proceeds as a mapping engine that is configured to map trace routes, so as to determine one or more optimal routes. Maybe a different way to get at this is, might be this. Why isn't what you're suggesting one that, I don't know, effectively reads optimal out or at least doesn't provide, doesn't treat it as independent? You're suggesting that a mapping engine that is configured to map trace routes so as to determine a route, or optimal route, would be the same as so as to determine a route. And the word optimal is what was the subject of this claim construction, so that's got to add something, and the addition of something is, I think, what is, was held to be indefinite. More than just, if you use these, then you are in the claim, that's not right. You have to use these to then do something with them that amounts to following this other standard of optimal, and that is the standard that is left too uncertain. Well, it's not, Your Honor, because it simply allows, it still, the term optimal is constrained by the trace routes. It's not superfluous because it allows the procedure to know, you can either prioritize hops or prioritize latency. Right, but to say it's constrained may be a way of saying there are two requirements that have to be met to come within it. One, you have to use these things. Second, it has to be optimal, and we'll stipulate that the first is definite, you're using these things, but the second is in the conjunctive, a requirement, not a conjunctive in here, in my translation of this into a conjunctive with an and, is also a requirement, and that's much too uncertain. Right, Your Honor, but I would push back on the suggestion that those two things are conjunctive in the claim language. The claim language instead draws a causal connection between the two. It doesn't say map trace routes and determine an optimal route. It says mapping trace routes so as to determine one or more optimal routes, and determining a best route based on a comparison between trace routes. But then aren't you erasing, giving no meaning to the term optimal if whatever the route is that's covered is just any route that you, not route, the choice, yeah, the route that you choose follows from using the trace routes? No, Your Honor, it still gives effect to the claim term because if that treats the purpose of the patent, which is to determine the most efficient network path, it makes clear that the OCDA can still choose between any of those factors that are output by trace routes. What is your best case support for the language here being sufficient to, sufficiently definite so that a person would actually know what falls within the scope of the claims at issue here? So, Your Honor, I think this case actually follows off fortiori from this court's precedent in Sonics Tech and Gwangyong Adelson. This court has never considered a term of degree where the claim language itself defines the method by which the term of degree is bounded. In Sonics Tech, the issue was visually negligible, and the court considered examples in the specification that set the outer bounds and provided a, quote, objective baseline for what was visually negligible. Here, the claim language itself does that, and the examples in the specification give effect to that. That's the comparisons in tables D, E, F, and G of the specification, as in Appendix 61 and 62, in comparing the routes between Node 1 and the client and Node 2 and the client. Do you agree that there's no meaningful difference between the representative claims identified by the parties that should affect our analysis in this case? There's no meaningful difference between the Claim 1 and Claim 17 of the court's decision that affects the claim construction. I agree, Your Honor. What about briefly talking about the non-infringement determination here? Does exclusion of the DNS resolver and consistent hashing theories affect the non-infringement determination? No, Your Honor. As we argued below to the district court, neither of those allegedly new theories, we argue that those were, in fact, bootstrapped the exclusion of mapper, but neither of those were claimed or case dispositive. The exclusion of the mapper allegation in the expert report was treated as case dispositive. I think my main takeaway from your argument about the striking, or at least I will say that right now, my sense of the strongest point you make is the other side has never identified any concrete prejudice, so I want to put that aside. We don't have to get to that if we think the summary judgment on the merits is correct, right? So what is your best case, best argument for why the district court was wrong about the summary judgment of non-infringement on the merits? Sure, Your Honor. So let me table set on that issue and start with a factual record. It's undisputed that there are two documents. One document that shows the diagram at 69 of the blue brief, Akamai's mapper receiving a request for content. Another Akamai internal document describes that mapper's job is to match her request for content with the best edge server to handle that request. And so for the district court to rule otherwise, it could only have done so on two grounds. Either those documents were, as a matter of law, insufficient to raise a genuine issue of material fact, or the district court was implicitly construing that term, request for content, as limited to a particular kind of computing message. And either one of those would have been error. On the facts, for the district court to reach that conclusion, it would have had to draw inferences against the non-movement media point. And you see that clearly in the district court's decision, which is it simply calls those documents, quote, too high level. The supposed concessions from media point's expert were only concessions under Akamai's construction of request for content. And so to give an analogy, media point's expert explained that mapper does not merely receive a DNS query, divorce from context, much like a document. Divorce from context? Divorce from context. Oh. Much like a doctor's office receives a request for medical services when it receives an appointment request, even if it doesn't know the specific feature. So this may be wrong, but let me just sort of tell you at least what is currently in my mind about the picture. I can imagine a system in which I'm a user, I want some content, I send a message up to device number one. That message specifies the content, the actual content. But device number one then sends a message up to device number two, and it doesn't say what the content is. It says translate the beginning of the URL into a IP address without saying what the content is. So device number two never gets any message of any sort that has information about the specific content, because device number one has stripped out all of that and just said, I want to know where an IP address for www.netflix.com. No more. Is it right, or Mr. Saunders maybe will tell us, I guess I sort of understood that what the district court was saying was what I just described is the only evidence, is what the only evidence shows their system to be. Device number two is mapper. It never hears about the content. Something else strips that out. Address that picture, either whether it's incorrect as a, address that picture. That's roughly accurate, Judge Toronto, that mapper never knows what the specific content is in the sense it doesn't know whether you requested the particular, let's say, Spiderman movie or the basketball game tonight. Our point is the request for content, though, is the user's request that's entered at his or her device or browser. But I thought the claim says that the relevant, I forget what the claim language is, the relevant server has to receive that. It says the management center has to receive an initial request for immediate content. Our point is it receives that request by receiving the DNS query, and in doing so, it understands that the user has requested content, and that's supported by the fact that the claim language, the rest of the claim elements use the term content stream as opposed to the content itself or content request. So our point is the request for immediate content, the claim in order, meaning construction of that term, it's a colloquialism. It's the user's request entered at his or her browser, not a specific computing message. And so in framing Akamai's argument, Judge Toronto, would be to accept, your framing accepts their framing of request for immediate content as a particular computing message. Our point is the mapper doesn't have to receive an HTTP request or any type of particular request that identifies the specific content for there to be infringement of that element. That it's enough that, in my example, device number two gets a request for translation into an IP address of a domain name, and the only time it ever gets that request is if somebody has requested content. And so it is effectively receiving a request for content, though only a portion of it. That's precisely right, Your Honor, except for I would excise the except the portion of it. I would agree with every other part of your characterization. I see I'm way over my time, Your Honor. It wasn't your fault. Why don't you sit down and we'll hear from Mr. Saunders. Thank you. And you'll get your rebuttal time back. May it please the court, starting with indefiniteness, there are two problems with media points condition. One is we have, and we know based on the specification, that we have this open-ended long list of factors. And they really don't have any argument to consider that a whole list of factors. But second, even limiting it solely to the output of trace routes, there still is a subjective determination that needs to be made here. Trace routes will tell you the latency, the hops, the reliability. But what is optimal? What is best? It depends on what you prioritize. It's the car example we have in there. What is best between a sports car, a pickup truck, a hybrid vehicle? It depends on do you want speed? Do you want hauling capacity? Do you want energy efficiency? And so in this context, we started, as Judge Stoll pointed out, with very broad claim constructions offered by media point. They're really circular and subjective. Even with this sort of new attempt to limit it to trace routes, the way it's being described here, as Judge Tarando's questions were probing, you could just cross the word optimal, cross the word best out of the claims, it would mean the same thing. It has to mean something. And the problem is it's supposed to be an interpretation, but we don't have the guidance here to know how to make that balance, even focused on trace routes. One thing that you said that's a little bit different is you said it could be hops, latency plus reliability. What is the difference? Why do you bring in reliability under trace routes as opposed to what I'm hearing from the other side? So to be clear, they conceded in the district court that reliability would be part of it. So Appendix 2030, their markman reply, as the specification explains, trace routes calculate route length, transmission reliability, and latency. But let me give you sort of a concrete example. We've been talking in the brief about Table A, which is one of the circumstances where earlier on in the hops, you actually have a higher round trip latency from the beginning to that earlier hop than you do from the beginning to the end. And that can be a signal of a reliability problem, which is as you were doing these trace routes, at some point you were actually getting a longer time. So your final result at the destination, maybe that looks like a good time, but the fact that earlier on something was going on there, there was a jitter, it was temporarily slower, may make you think, is there a reliability problem in this route? So even if I like that bottom line, how it's getting to the client, what's going to happen when I actually run this? Just to make sure I'm in the same place, this is because 189 comes after but is smaller than 217? Correct. And so we're all clear, these are round trip times. So each time on the trace route, it's from the beginning to that point, beginning of the point, they're not cumulative. So it is showing, you know, oh, 189. So the fifth test path, which goes through all the others, is actually from beginning to fifth one, and that one was faster when it did the previous test path only to number four, it was longer, but by the time the fifth test was run, there was smooth sailing. Absolutely. And so that's another thing you have to balance, because that's a reliability question. Do I care about this? Am I content to say, oh, I'm going to optimize based on latency at the end? Or do I say, actually, I'm worried about those higher numbers earlier, and when I do this one more time to try to reach the end, am I going to have that same jitter? Is it going to be a problem? So even within trace routes, these balancing of factors doesn't leave the objective boundary. And so why is this materially different from SONIX? So in SONIX, you ended up with a, the claim was talking about what is visually negligible, and there was really only one dimension there. And the court said that's an objective standard because it's based on the capacity of the human eye, which is something that can be objectively determined. And so based on that, you could say, okay, we know where the cutoff is, really where the average person can no longer see this, then that becomes visually negligible. That's fundamentally different from an optimal claim like the intellectual ventures case, where what has to be optimized based on different factors ends up being a, what factors do you prioritize? You know, for the other issues, because it was discussed, we're sort of jumping straight to summary judgment. They have to win both on exclusion and summary judgment. You know, the key thing to remember here is what the district court is focusing on first and foremost is their expert's own testimony. And what is actually going over to MAPR? It's the DNS query. Q Just to interrupt one thing, you said they have to win on both exclusion and summary judgment. Do you think they could win on summary judgment on the merits? And I think there's some questions Judge Toronto asked, even if we didn't agree with respect to the exclusion that's made. A I'm saying we win on either. They're independent grounds, right? If the evidence is excluded, we win on summary judgment. Even reaching the merits, we win on summary judgment. So you never need to consider the exclusion. And on this question, so we're agreed, it's just the DNS query going over. So what did their experts say at 2770 through 2771? Quote, a DNS query itself is not the request for content described in the 195 pact. And the reason is, as Judge Toronto's questioning was getting at, that whatever the user is doing, we have a claim that requires that the request for content be received. And what the DNS query does, it has information stripped out. It doesn't know if I type in sort of a web address and I'm looking for a specific video, whatever I'm doing there, that information and the actual content I'm looking for never makes it to Akamai's mapper. All that ends up going is the host name. It just wants that translated into the numerical IP address. That comes back. And then I know what edge server to go to and the request for content is made there. So Akamai's system doesn't know at the level of the mapper what content. And on the evidence here, do I understand correctly, we don't have proof of a system in which the central management server, the mapper, looks at what content is being requested to determine which of a number of edge servers to refer, to send back as the place to go? Yeah, absolutely not. Akamai's system works based on serial numbers. So think of who is the client for them would be the third party whose content they're hosting. And you would have a whole bunch of different companies or sites may get lumped together under the same serial number. Think of it as all the local businesses in this region might be under the same serial number. And so a request will be sent to an edge server that might be local to this region. But it doesn't have anything to do in that system, in that first routing with what content is being requested because the mapper doesn't know what content you're requesting. In terms of the diagram, so there is a figure that was being misinterpreted to say, O is the request for content. Is this the one where there are two different versions? Yes. Yeah. And so the key context is at 2659 of the appendix, you can see the questions that were asked of their expert witness. And he agreed that that first figure doesn't include a number of contents. And our expert at 2688 says it doesn't operate in the way that he was interpreting that figure. The figure then gets revised. This is 2683 of the appendix. And their expert admits that... I'm sorry. Passive voice. Figure then gets revised. Who's doing the revision? Akamai revised the figure because he said... For litigation purposes. Right. He said, if you think this figure is showing that, clearly this figure isn't clear enough. And it revised it. Importantly, their expert, this is at 2683, agrees that the revised figure is, quote, consistent with how a DNS query would work in the real world, right? So they can't have a... And that's quite crucial because otherwise it might be a fact question. Which of the two versions that you produce you should be stuck with or benefit from. But you can't get to a fact question by saying, you want to look at the old figure rather than how it actually operates. And coming out... Unless there's a dispute about whether the first figure is how it actually operates. Right, unless there's a dispute, right. But then I'm saying, and here on top of this sort of testimony about the figures, direct testimony from their expert as to what is going over. And we heard it today as well. It's only that DNS query and the direct admissions of the DNS query. Is it not the request for content? So I'm happy to address the exclusion point, but this court doesn't... I guess I'd be interested. I mean, you heard me say before that I think there's a hole in what I've read from you on the subject of prejudice. Right, so let me be more direct with it. The reason for that is because we think that going through eight months of discovery on the wrong theory and then be confronted with a new theory a month before your expert report is due is itself prejudice. And that nothing more... Well, one of the... I may be misremembering this. So I don't remember your ever saying, or maybe more importantly, the district court ever saying that he, in your case, should, in his case, would strike... have stricken this if this came in the June final infringement contentions as opposed to barely two months later in the August expert report. So I'm not sure eight months is the right time period to be thinking about. I would have thought that the two-month difference is so that... Right, I think you understand my point. I understand your point. It's a very critical two months because what happens in those two months? Discovered and closed. Discovered and closed and claim construction comes out both, right? Isn't claim construction come out in the middle in July? Before the contentions, if I'm remembering correctly. Okay, I don't think so. That's okay. Okay. And so, you know, fact discovery then closes and then we have an expert report with this new theory, new source code. As we pointed out, you know, in element 1B, all of the source code that's being identified in the final infringement contentions, none of those files are mentioned anymore. We have new files that are being accused. But just to speak to your specific concern, we don't think when the burden's on them to prove harmlessness that we have to come forward and say, oh, here is the specific deposition question we would have asked. But let me give an example in the context of this case that may help us wage that concern, which is one of their new theories was the claims have trace routes to the client. And they came in with the new theory about the DNS resolver and said, well, contentions were doing trace routes to the client. Now we're going to do trace routes to your third-party DNS resolver. And then we're going to use that as a proxy. We're going to approximate from there. You know, knowing that claim, we may have done different prior art searches, right? That, if that is their view of the claim, that unlocks sort of potentially different system art. Now, we haven't run those searches. The case was over. It was struck. But that's the type of thing.  Go ahead. Do you agree that exclusion of the DNS resolver and consistent hashing theories, or do you believe the exclusion of the DNS resolver and consistent hashing theories affects the non-infringement determination here? Yes, it does. Because they have to prove infringement on every element. And so if their theory for that trace route to the client is now a new theory that's about approximating it based on the DNS resolver, and that's excluded, then that would be dispositive for them as well. But, you know, the mapper theory as well was a new theory. You know, we see that most dramatically in this shift in the source code that's being cited. Do you also agree that the district court did not actually make a finding regarding willfulness, fault, or bad faith? It did not ask, it did not make a direct express finding. We think implicit is a finding of fault. It was never asked to. And so that would be a forfeited argument here. And I do just want to clarify in the Munchkin case, which is the Ninth Circuit case that we've cited, the reply brief came back and said, oh, there wasn't even an argument of harmlessness. It's looking at a sort of much earlier period. But for ECF 516 on that district court docket is the operative request. And it was talking about the substantially justified or harmless rule. Harmlessness is where there's no prejudice. So the point is Munchkin is finding forfeiture of this specific finding that has to be made in a circumstance where a party is talking about harmlessness and substantial justification, but as here doesn't say, and you need to make this additional finding. I know the parties made or identified different representative claims. Do you agree though that there's no meaningful difference between the representative claims identified the parties that should affect our analysis here? No, it shouldn't. The one thing I would say is on this issue on indefiniteness, when you're looking at the full range of factors that's given in the specification, they've attempted to distinguish that by saying, oh, that relates to the best performing node index. The node and the best node optimal trace rate, they're related, right? Because the nodes are in the trace route. And so I think the fact that they are treating a node claim as representative there is telling. And we have expert testimony in the record that says, sort of, when you're optimizing for one, it's true for the other and vice versa. Sorry, I've seen my time is well expired. Thank you. You'll have your three. Thank you, your honors. I have two quick points on each of the issues here. Let me start with exclusion and work backwards. On prejudice, I heard my friend on the other side again lead with this idea that there's prejudice inherent in delay, but again, specifically not identify any prejudice. That is itself evidence that the theory did not fundamentally change. The theory was the same theory, and that's why they were able to proceed and not have to take any additional discovery, not identify any additional witnesses, and why they're unable to identify any prejudice here today. Well, I thought I just heard opposing counsel indicate that the prejudice is that by getting the theory at the later time, it meant that they didn't get to ask potential other questions they might have asked during the fact discovery phase, so to speak, because they weren't aware that the new theory was even going to be in play. So how do you respond to that? Your honor, it wasn't a new theory, and the only specific example that my friend on the other side hypothesized was about the DNS resolver to the client and not the core theory on which the district court granted the exclusion motion, MAPR, and MAPR was an identical functionality to GTM. We just simply made a semantic error that we diligently corrected, and so even the sort of question that he hypothesized he made as differently doesn't relate to the core of the district court's exclusion motion. On willfulness, fault, and bad faith, there's no question there was no finding here. My friend concedes it, and the district court did not make any finding that there was any disobedient conduct, which is a Ninth Circuit standard under liberty insurance, R&R sales. It's not enough merely that the expert report isn't within the party's control. That would be true of any supposedly late disclosure. Does this point on your part depend on our accepting the proposition that this is non-forfeitable? No, your honor, and it doesn't depend on that conclusion as non-forfeitable because we didn't forfeit it anyways. That because the willfulness, bad faith, and fault inquiry is subsumed under the substantial justification and harmlessness inquiry under Rule 37, and that was indisputably raised below. And if in any event, if there was forfeiture, this is a canonical case in which it should be excused because it's a pure question of law. It's not even disputed in this case that there was no finding or that that finding is required, and so reversal is straightforwardly required. On summary judgment, again, everything my friend has said depends on a claim construction of request for media content as identifying a specific piece of content. Well, just I guess the really simple version that I think I heard is your expert said that you agree that only the DNS inquiry, not anything specifically about the content, goes up to MAPR and that your expert said that is not a request for content that the claim talks about. Two corrections there are. So one, our expert is, the point he was making in his deposition is that those two things are not definitionally the same thing because definitionally the DNS query asks for an IP address and a request for content is a user requesting content at his or her device. The deposition testimony that my friend omits, this is at the grade brief at 32, Dr. Rubin said. I'm sorry, do you have a JA site, the actual deposition? Yes, it's Appendix 3691. Thank you. Dr. Rubin said the user initiates the request and that results in the DNS query being received by the MAPR that is related to that user's request and that is the MAPR receiving the request for content when it gets that DNS query that relates to the user's request for content. And so that's consistent with the summary that you gave at the end of my initial talk, the judge for content. Finally, on claim construction, I'd like to make one final point in closing, which is, again, the prioritization issue is a complete red herring. Reliability, whether it's included or not, is an inferrable factor from, it would be an inferrable factor from trace routes anyways. Whether it's two factors or three factors, it doesn't matter because the scope of the claim is clear. Whether you prioritize reliability, hops, latency, as long as you're doing so based on the mapping of trace routes, that would infringe the claim. And so this doesn't make it subjective like intellectual ventures where the specification expressly said quality of service depends on whatever the subjective vagaries of the user are. There's no such language in this specification tied to the best or optimal terms. And even if there were, it couldn't override the express claim language, which draws a causal connection between the best and optimal terms and the mapping and comparison of trace routes. Thank you, Your Honors. Thank you. Thank you to both counsel. The case is submitted.